# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Partners in Travel, Inc.

v.

Charynn R. Marshall et al.

Civil Action No. CCB-19-435

## MEMORANDUM

Plaintiff Partners in Travel, Inc. ("PIT") is a travel agency located in Maryland. Charynn Marshall and Larry Marshall both worked as travel agents for PIT and currently reside in Florida. PIT has sued Charynn Marshall and Larry Marshall (collectively, the "Marshalls") alleging that they held themselves out as travel agents for PIT while booking customers through another travel agency; overpaid themselves from PIT funds; and used PIT's credentials to change its page on a wedding planning website to bear the name of a rival travel agency. PIT brings claims for false designation of origin/unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); unfair competition under state law (Count II); breach of contract (Count III); breach of the fiduciary duty of loyalty (Count IV); aiding and abetting the breach of the fiduciary duty of loyalty (Count V); and unjust enrichment (Count VI). The Marshalls have filed a motion to dismiss for failure to state a claim and/or lack of subject matter jurisdiction.[1] The motion has been fully briefed and no oral argument is necessary. For the reasons stated below, the court will deny the Marshalls' motion to dismiss.

## FACTS

The Marshalls began working for PIT in 2006, with Larry Marshall as a travel agent, and Charynn Marshall as the operations manager. (ECF 1, Compl. ¶¶ 16–17, 19). Charynn Marshall ceased being PIT's operations manager around December 31, 2017, but then became a travel

---

[1] Except for their argument that this court lacks subject matter jurisdiction, the Marshalls do not otherwise seek to dismiss the claims for unfair competition under state law (Count II) and breach of contract (Count III).

1

agent for PIT. (*Id.* ¶¶ 18–20).[2] According to PIT, pursuant to their agent agreements, the Marshalls agreed "to be an exclusive agent of PIT and not to perform travel agent services for any other travel agency" while the agreements were in effect. (*Id.* ¶¶ 17–18). According to PIT, two emails sent by Charynn Marshall in early 2018 demonstrate that the Marshalls "harbor an animosity towards" PIT. (*Id.* ¶¶ 21–22, 25). These emails relate to certain benefits that Charynn Marshall believed she was entitled to that she did not receive. (*Id.* ¶ 21).

According to PIT, in December 2018, PIT received a call from Gwendalynne Corkran seeking to cancel a cruise to Cuba that she and Robert Edward Corkran had booked through the Marshalls. (*Id.* ¶ 28; ECF 1-4, Travel Confirmation). The cruise, however, had actually been booked by the Marshalls on or about May 27, 2018, through another travel agency, Four Seasons Travel. (Compl. ¶ 29). The Corkrans told PIT that "they mistakenly believed they were booking through [PIT], not through a different travel agency." (*Id.* ¶ 33). PIT alleges that the Marshalls "held themselves out as agents booking through PIT, including, but not limited to, in e-mails and on social media sites" and "never disclosed to the" Corkrans that they were booking through another travel agency. (*Id.* ¶ 30).

Shortly after communicating with the Corkrans, PIT "terminated its agency relationships with the Marshalls," reviewed the Marshalls' records, and "discovered that the Marshalls, while [] Charynn Marshall was its operations manager, consistently overpaid themselves and misused PIT's funds to pay for personal expenses including, for example, dinners, wine and a trip to a nail salon." (*Id.* ¶¶ 34, 35). PIT alleges that between 2015 and 2017, "the Marshalls overpaid themselves approximately $28,000 and took another approximate $20,000 for personal expenses." (*Id.* ¶ 36).

---

[2] As travel agents, Larry and Charynn Marshall were independent contractors. (ECF 1-2, Compl. Ex. A, Agent Agreement for L. Marshall; ECF 1-3, Compl. Ex. B., Agent Agreement for C. Marshall). The exact nature of the employment relationship between Charynn Marshall and PIT when she was operations manager is not clear.

2

Further, PIT alleges that Charynn Marshall "continues to falsely affiliate herself with PIT as evidenced by her LinkedIn account." (*Id.* ¶ 31). PIT also alleges that, in January 2019, the Marshalls used PIT's credentials, without permission, to access PIT's online account with The Knot ("a premier wedding planning website"), and "switched PIT's 'storefront' name to Four Seasons Travel and usurped from PIT a banner advertisement from The Knot using it to advertise Four Seasons Travel." (*Id.* ¶ 41).

PIT brings Lanham Act, state law unfair competition, and breach of contract claims (Counts I, II, and III) related to the alleged use of "Partners in Travel" while booking for another travel agency, and the alleged interference with PIT's "The Knot" account. The claims for breach of the fiduciary duty of loyalty, aiding and abetting the breach of the fiduciary duty of loyalty, and unjust enrichment (Counts IV, V, and VI) relate to the alleged overpayments while Charynn Marshall was operations manager.

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they

3

"will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## ANALYSIS

<u>False Designation of Origin/Unfair Competition</u>

Under 15 U.S.C. 1125(a):

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). PIT's claim under subsection (A) is referred to as a "false designation" or a "false association" claim. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 n.4 (4th Cir. 2016). This claim requires the defendant's "use[] in commerce" of the mark, and a showing that the plaintiff is "likely to be damaged" by such use.[3] *See id.* at 706.

---

[3] In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, the Supreme Court held that a § 1125(a) cause of action for false advertising is available only to those plaintiffs who fall within the zone of interests and whose injuries are proximately caused by the violations of the statute. 572 U.S. 118, 129, 131–32 (2014). Except for the arguments discussed in this memorandum, the Marshalls do not otherwise challenge that PIT meets the requirements to bring suit for false association under § 1125(a).

4

The Marshalls argue that the plaintiffs have not sufficiently alleged that the Marshalls used the mark "Partners in Travel" in commerce and in connection with the sale of goods or services. They argue that PIT's conclusory statements that the Marshalls "held themselves out" as PIT's agents and used the mark in emails is not sufficient to show that it was used in commerce. Additionally, they argue that the alleged improper use of "Partners in Travel" with the Corkrans was through intrastate emails and thus not actionable under the Lanham Act.

"Commerce" as used in 15 U.S.C. § 1125(a) means "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. A service mark[4] is deemed to be in "use in commerce" when "it is used or displayed in the sale or advertising of services and the services are rendered in commerce[.]" *Id.* The broad scope of Congress's Commerce Clause powers was discussed in *Christian Faith Fellowship Church v. Adidas AG*, 841 F.3d 986 (Fed. Cir. 2016). There, the Federal Circuit held that, for the purposes of trademark registration, the sale by a church of two hats displaying the trademark in question to an out-of-state resident constituted "use in commerce" under the Lanham Act and fell within Congress's Commerce Clause powers, as the transaction at issue was "quintessentially economic" and "taken in the aggregate, would cause a substantial effect on interstate commerce." *Id.* at 992–93 (citations omitted).[5]

Here, the alleged use[6] by the Marshalls of the "Partners in Travel" mark with the Corkrans is sufficient to allege that it was used "in commerce." First, the transaction at issue is economic, as it involved the Marshalls selling or offering to sell their services as travel agents.

---

[4] It appears that "Partners in Travel" is a service mark, not a mark for goods.

[5] *Christian Faith* involved marks for goods, rather than services marks. The "in commerce" requirement is the same for service marks and marks for goods. *Id.* at 994. Further, although *Christian Faith* concerned trademark registration, it relied on the definition of "commerce" in the Lanham Act, which is also applicable to this case. *See id.* at 989; 15 U.S.C. § 1127.

[6] Although the Marshalls argue that PIT does not provide any details about the contents of the emails with the Corkrans, viewed in the light most favorable to PIT, the allegations that the Corkrans believed they were booking their cruise through PIT supports the inference that the Marshalls used the mark "Partners in Travel" in communications with the Corkrans.

5

Second, PIT has sufficiently pled that the transaction was in interstate commerce. Although it is not clear when the Marshalls moved from Maryland to Florida, it appears that the emails were sent between the Marshalls, residing in Florida, and the Corkrans, residing in Maryland. Moreover, the services provided, which apparently involved booking a cruise to Cuba on Carnival cruise lines, also involved interstate commerce. (*See* Compl. ¶ 32; ECF 1-4, Cruise Reservation). Finally, the alleged use of the mark was in connection with a sale, because it was in connection with the Marshalls' sale of their travel agent services.[7]

The Marshalls also contest whether their alleged use of the mark was likely to confuse customers. Likelihood of confusion is an inherently factual issue, and at least nine factors are relevant: "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 153 (4th Cir. 2012) (citation omitted) (also noting that the "list of factors is not intended to be exhaustive or mandatory, *id.* at 154).[8] Here, PIT alleges that the Marshalls used the mark "Partners in Travel," which is identical to PIT's mark, in order to book travel services, which are also offered by PIT. Factors 2 and 3 therefore weigh in favor of finding a likelihood of confusion. Moreover, factor 7 weighs in

---

[7] PIT also alleges that Charynn Marshall used "Partners in Travel" in commerce by posting it on Twitter and LinkedIn. It appears the tweet in question was posted in 2013, when Charynn Marshall was operations manager for PIT, and there is no allegation that in 2013 she was using the mark improperly. As to the use on LinkedIn, it is not clear if this constitutes use in connection with the sale or advertising of services. Regardless, as the court finds that PIT has stated a claim with respect to the communications with the Corkrans, there is no need to determine at this time whether these additional alleged uses of the mark also constitute violations.

[8] *Rosetta Stone* involved a claim for trademark infringement, but "[t]he test for a false designation of origin/unfair competition claim is essentially the same as the test for trademark infringement." *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 327 (D. Md. 2017).

6

favor, as the Corkrans were actually confused.[9] Therefore, the court finds that PIT has stated a claim for violation of 15 U.S.C. § 1125(a).

The court may exercise supplemental jurisdiction over the other state law claims, as they arise from a "common nucleus of operative fact." *O'Bannon v. Friedman's, Inc.*, 437 F. Supp. 2d 490, 492–93 (D. Md. 2006). Therefore, the court need not decide at this time whether PIT's state law claims meet the amount-in-controversy requirement for diversity jurisdiction.

Breach of Fiduciary Duty

PIT alleges that Charynn Marshall breached her duty of loyalty to PIT, as operations manager, when she overpaid herself and Larry Marshall, and that Larry Marshall aided and abetted this breach of the fiduciary duty of loyalty. The Marshalls argue that there is no independent tort for breach of fiduciary duty in Maryland.

The Maryland Court of Appeals held in *Kann v. Kann* that "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries," 344 Md. 689, 713 (1997). The Maryland Court of Special Appeals reiterated in *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay* that "*Kann* and its progeny do not obliterate the possibility of a separate cause of action for breach of fiduciary duty in an action seeking equitable relief. In a claim for monetary damages at law, however, an alleged breach of fiduciary duty may give rise to a cause of action, but it does not, standing alone, constitute a cause of action." 197 Md. App. 586, 631 (2011). Only monetary damages are at issue here. Whether PIT may bring a claim for breach of the duty of loyalty owed by Charynn Marshall as an employee (while she was operations manager) is not entirely free from doubt, but there is

---

[9] The Marshalls argue that they were upfront with the Corkrans that the cruise was booked through Four Seasons, pointing to a credit card authorization form (ECF 15-2) and an agency confirmation (ECF 8-2) that bear the name "Four Seasons Travel." Even if the court could consider these documents on a motion to dismiss, whether the Corkrans believed they were booking through PIT or Four Seasons Travel, and what was represented by the Marshalls to them, remains an issue of fact not appropriate for resolution on a motion to dismiss.

7

support for PIT's position. *See Adobe Systems Inc. v. Gardiner*, 300 F. Supp. 3d 718, 727 (D. Md. 2018). Because the case is proceeding on other claims, the court will deny the motion to dismiss as to Counts IV and V.

Unjust Enrichment

The elements of a claim based on unjust enrichment are: "1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n.7 (2000). An unjust enrichment claim generally cannot be brought where there is "an express contract defining the rights and remedies of the parties." *Id.* at 101.

As to Larry Marshall, it does not appear, at least at the motion to dismiss stage, that his agency agreement covers the subject matter of overpayments or defines the rights and remedies of the parties if overpayments occurred. Further, the court does not have before it any contract governing the employment relationship between Charynn Marshall and PIT when she was operations manager, at the time the alleged overpayments took place.

The Marshalls also argue that PIT has not sufficiently alleged they "knowingly" received overpayments. Viewing the facts in the light most favorable to PIT, however, PIT has sufficiently alleged the Marshalls knew of the overpayments, as PIT claims that the Marshalls "consistently overpaid themselves and misused PIT's funds." (Compl. ¶ 35).

Further, at the motion to dismiss stage, pleading in the alternative based on both contract and unjust enrichment is permissible. Therefore, the court will deny the motion to dismiss as to Count VI.

Punitive Damages

PIT requests punitive damages for the claims for unfair competition under state law, breach of the fiduciary duty of loyalty, and aiding and abetting the breach of the fiduciary duty of loyalty. To obtain punitive damages, Maryland law requires the plaintiff to prove that the defendant acted with "actual malice," *i.e.* "conduct of the defendant characterized by evil motive, intent to injure, ill will, or fraud." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 264 (2004). PIT argues that it alleges sufficient facts showing the Marshalls' ill will and animosity towards PIT, pointing to two emails sent by Charynn Marshall to PIT in early 2018, as well as the Marshalls' accessing and changing of PIT's site with the Knot in January 2019. (ECF 13, Pl.'s Opp'n at 14). While the allegations do not provide strong support for PIT's claim, the court prefers to rule on a more fully developed factual record. Accordingly, the motion to dismiss the claim for punitive damages will be denied.

## CONCLUSION

For the reasons stated above, the court will deny the Marshalls' motion to dismiss. A separate order follows.

1/14/20
Date

CCB
Catherine C. Blake
United States District Judge